**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

---

**KIMBERLEY D. BRANTLEY,**                                          **PLAINTIFF**
**ADMINISTRATRIX OF THE ESTATE**
**OF BENJAMIN BRANTLEY, DECEASED**

**V.**                      **CASE NO. 3:16-CV-352 (DPM)**

**UPS GROUND FREIGHT, INC.;**                                      **DEFENDANTS**
**OPTIMUM STAFFING, INC. d/b/a**
**OPTIMUM LOGISTIC SOLUTIONS;**
**ROBERT L. WOODALL and JOHN DOES 1-6**

---

**BRIEF IN SUPPORT OF**
**MOTION *IN LIMINE***
**TO EXCLUDE PORTIONS OF THE OPINIONS OF**
**GARY T. SOUHEAVER, Ph.D., ABPP**

---

Plaintiff Kimberley D. Brantley, Administratrix of the Estate of Benjamin Brantley, deceased, by and through undersigned counsel, has moved *in limine* for an order excluding the inadmissible portions of the opinions of Gary Souheaver, Ph.D., ABPP. Plaintiff asks this Court to prohibit Dr. Souheaver from offering any testimony related to his conclusion that he "cannot provide an accurate diagnosis [for Danielle Brantley] since we were unable to rule out purposefully over-endorsement of symptoms for secondary gain."[1] Plaintiff also requests that the Court prohibit Dr. Souheaver from testifying and opining about Danielle's credibility or the psychological impact of her father's death on her emotional and mental health. These opinions invade the province of the jury, who are the sole judges of a witness' credibility, and are inadmissible. *See Nichols v. American Nat. Ins. Co.*, 154 F.3d 875 (8th Cir. 1998). Dr. Souheaver's observations will not assist

---

[1] *Exhibit A* at OSI Brantley 000176

the jury in determining whether to award of Danielle damages for the emotional distress and mental anguish she has suffered as a result of her father's death; therefore, his expert testimony must be excluded. FED. R. EVID. 702; FED. R. EVID. 402. Further, even if his opinions about Danielle were helpful and relevant (they are not), any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. FED. R. EVID. 403; *U.S. v. McQuarry*, 816 F.3d 1054 (8th Cir. 2016). For these reasons, Dr. Souheaver's opinions with respect to Danielle are inadmissible.

## FACTS

On April 10, 2016, Benjamin Brantley was killed in a multi-vehicle collision. He left behind a wife, Kimberley Brantley, and a daughter, Danielle Brantley. Two years after Benjamin's death, Dr. Souheaver performed a psychological evaluation of Kimberley and Danielle's emotional status following Benjamin's death. His evaluation of each woman, which took place on March 5, 2018, from 10:00 am to 12:15 pm, consisted of a clinical interview and the administration of the Minnesota Multiphasic Personality Inventory-2, Restructured Form (MMPI-2 RF) test by a receptionist.[2]  Dr. Souheaver "did not conduct any cognitive evaluations of Danielle and did not review her medical records."[3]

Dr. Souheaver's evaluation of Danielle, and the opinions generated therefrom, are the subject this Motion. According to Dr. Souheaver, "[g]iven the extreme response-bias documented by the MMPI results in this case, valid diagnostic categorizations are problematic" such that he "cannot provide an accurate diagnosis in this case since we were unable to rule out

---

[2] *Exhibit A* at OSI Brantley 000174 & 000175; *Exhibit B* at 14:5-15, 17:19-25, 18:8-15, 182:5-15
[3] *Exhibit B* at 38:9-11; *see also Exhibit A* at OSI Brantley 000174; *Exhibit B* at 10:5-7

purposeful over-endorsement of symptoms for secondary gains."[4]   When asked to explain this opinion, Dr. Souheaver offer the following:

- "I have evidence that she was over-endorsing if not exaggerating symptoms, making her self-reports unreliable."[5]

- "I do not know her intentions while responding. I know that there was a response bias. Response bias is – in response to each of the items, there was a response that was not accurate. It was biased. That the response was biased and that the tendency to over-endorse is, of itself, the bias."[6]

- "I was unable to [make a diagnosis] because of the response bias while answering the MMPI. There was an obvious discrepancy between her clinical presentation and the extreme elevation on the clinical scales on the MMPI, … so I was unable to formulate a reliable diagnosis."[7]

- "Whatever the scale measures cannot be interpreted because of the extreme over-endorsement of the items in the profile. The printout – in my interpretation of this MMPI is that the over-endorsement was so great that I could not reliably determine a diagnosis of any of these scales nor confirm them."[8]

- Even though Danielle's "response indicate[s] significant and pervasive emotional distress. More specifically, she reports a significant lack of positive emotional experiences, pronounced anhedonia, and marked lack of interest. She is very likely to lack energy and to display vegetative symptoms of depression," Dr. Souheaver did not discuss these results in his report and instead opined that her "responses were so over-endorsed and exaggerated that a reliable diagnostic statement would have been misleading and inconsistent with my ultimate conclusion. That is, I could not derive a psychological diagnosis in this case."[9]

- "I couldn't establish any diagnosis and it would have been futile for me to list possible diagnostic considerations when my ultimate conclusion was that I could not reach a diagnostic impression."[10]

- "I am diagnosing her with nothing."[11]

---

[4] *Exhibit A* at OSI Brantley 000176
[5] *Exhibit B* at 41:24-42:2
[6] *Exhibit B* at 43:18-19, 21-22, 24; 44:1-2
[7] *Exhibit B* at 46:1-4, 9
[8] *Exhibit B* at 144:17-19, 22-25
[9] *Exhibit B* at 149:13-150:1
[10] *Exhibit B* at 151:16-19
[11] *Exhibit B* at 158:20

Dr. Souheaver's opinions attack Danielle's credibility and reliability under the guise of a medical opinion.

Dr. Souheaver attempted to backtrack on his "over-endorsement for secondary gain" opinion by saying he was not opining that Danielle was malingering; however, he did not make a diagnosis because she was exaggerating her symptoms.[12] When explaining why he could not make that diagnosis, Dr. Souheaver reverted to his mantra – "I am not able to formulate a diagnosis in this case because of the over-endorsement in the MMPI."[13]

Dr. Souheaver's opinions are nothing more than his personal assessment of Danielle's credibility and truthfulness. Indeed, it is clear from his decision to omit pertinent test results which would refute his assessment of Danielle's credibility that Dr. Souheaver simply wants to tell the jury that she is lying and over-exaggerating the psychological impact of her father's death.[14]  Dr. Souheaver simply wants to tell the jury that "we can't rely on her self-reports because of the over-endorsement and exaggeration."[15]  Interestingly, and despite giving this opinion, Dr. Souheaver is "not licensed nor trained to recognize self-reporting in a medical diagnosis."[16]

---

[12] *Exhibit B* at 41:23-43:6; 46:1-4, 9, 21-22, 24-25; *see also Exhibit B* at 159:1-5 ("We gave her a test. The test indicates, in my opinion, there was over-endorsement. And I did not want to establish a reliable – or I could not – based on my interpretation, I could not establish a reliable or valid diagnosis"); 189:22-23 ("I have an opinion that she is not malingering; she doesn't meet those criteria")

[13] *Exhibit B* at 46:21-22; *see also Exhibit B* at 46:24-25 ("I am unable to diagnose any condition because of the over-endorsement and exaggeration on the MMPI"); 52:3-4 ("I'm unable to diagnose any condition or absence of condition because of the exaggeration on the MMPI").

[14] *See Exhibit B* at 100:2-101:4, 103:8-103:20, 104:16-18, 104:22-107:23, 109:7-110:7, 114:4-11, 116:20-25 128:2-129:2, 145:3-20 (discussing the scale results that Dr. Souheaver chose to omit from his report, despite the MMPI-2 RF guidelines stating that those scales are relevant to an assessment of over-exaggeration or over-reporting)

[15] *Exhibit B* at 157:22-24; *see also Exhibit B* at 167:9-10, 167:25-168:3 ("Her self-reports are generally over-endorsed on the MMPI" yet "[i]n the clinical interview, her self-reports indicated psychological distress. The particular kind, quality, severity, I would have to rely on an objective test such as the MMPI").

[16] *Exhibit B* at 170:1-2

## ARGUMENT

A.   *Dr. Souheaver's over-exaggeration and secondary gain opinions are inadmissible as a matter of law.*

Dr. Souheaver's primary opinion in this case is that he cannot diagnosis Danielle with any psychological or emotional condition because she is engaging in "purposeful over-endorsement of symptoms for secondary gains."[17]  It is well settled that an expert cannot offer opinion testimony regarding a secondary gain or a witness' over-exaggeration for monetary purposes. *Nichols*, 154 F.3d 875; *Glover v. Main Street Wholesale Furniture, LLC*, 545 S.W.3d 245 (Ark. App. 2018); *see also Harris v. Ladd*, 2012 U.S. Dist. LEXIS 8266, *3 (E.D. Ark. Jan. 25, 2012) (The expert "has no foundation for testifying regarding the mental state of either of the plaintiffs, so he will not be allowed to offer testimony which would say explicitly or that would imply that the plaintiffs' purported injuries have anything to do with the possibility of secondary gain").

Here, as in *Glover*, Dr. Souheaver opines that he cannot diagnosis Danielle because she is over-endorsing her psychological symptoms for financial gain. And, again like the *Glover* expert, Dr. Souheaver attempts to sugarcoat his secondary gain opinions with qualifications that he is not expressing an opinion that Danielle is malingering --- he just cannot diagnosis her. Dr. Souheaver's are, likewise, indistinguishable from the expert psychologist's opinions in *Nichols*. There, as Dr. Souheaver opines here, the *Nichols* expert impugned the plaintiff's credibility and suggested that recall bias and secondary gain had influenced her story. In all instances, the expert testimony must be excluded because it is not helpful and creates a serious danger of confusing and misleading the jury. *Nichols, supra; Glover, supra.* Accordingly, Dr. Souheaver's "secondary gain" opinion and

---

[17] *Exhibit A* at OSI Brantley 000176

all opinion testimony related to Danielle's credibility and alleged over-endorsement[18] is inadmissible.

B.    *Dr. Souheaver's opinions about Danielle's emotional status do not satisfy Rule 702; therefore, they are inadmissible.*

The admission of expert testimony is guided by FED. R. EVID. 702 and the principles of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). There are two requirements for expert testimony under Rule 702(a): (1) the expert's knowledge must be scientific, technical, or specialized; and (2) the knowledge must help the trier of fact to understand the evidence or to determine a fact in issue. *Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005). Dr. Souheaver's opinions about Danielle's emotional status and the impact of her father's death of her psychological well-being fails both prongs.

First, and although Dr. Souheaver is a licensed psychologist otherwise qualified to offer opinions, the "knowledge" her purports to tell the jury is a judgment or credibility assessment of Danielle's underlying motivation. He unequivocally testified that he was unable to diagnosis Danielle with any psychological condition based upon the objective MMPI-2 RF testing because of her over-reporting. Yet, Dr. Souheaver is "not licensed nor trained to recognize self-reporting in a medical diagnosis."[19]

Furthermore, Dr. Souheaver admits that he did not report the scales that would have revealed whether or not Danielle is exaggerating because he had already concluded that he could not rely on her self-reports. His refusal to consider scale results that indicate Danielle is suffering from "severe psychopathology and severe emotional distress"[20] because he has concluded that Danielle is over-exaggerating or over-endorsing her symptoms for secondary gain is a subjective

---

[18] *See, generally, Exhibit B*
[19] *Exhibit B* at 170:1-2
[20] *Exhibit B* at 109:21-24, 109:24-110:7; *see also Exhibit B* at 114:4-11

opinion. In other words, his opinions are not based in any "scientific, technical, or other specialized knowledge." FED. R. EVID. 702(a). It is simply one human being listening to another human being and deciding whether he believes her. Such "expert" testimony is not admissible. *See Nichols, supra; Harris, supra; Glover, supra.*

Second, even if Dr. Souheaver's "knowledge" was scientific, technical or specialized, his opinions about Danielle are not relevant because they will not assist the jury. "The relevancy of the [expert's] testimony depends upon whether it can properly be applied to assist the trier of fact to decide facts in issue. Such evidence is not helpful if it draws inferences or reaches conclusions within the jury's competence or within an exclusive function of the jury." *Nichols*, 154 F.3d at 883 (citations omitted). In short, regardless of an expert's specialized knowledge on a given subject, he is not permitted to "offer an opinion about the truthfulness of witness testimony." *Id.*

The *Nichols* case is particularly instructive here because Dr. Souheaver's opinion testimony is similar to the testimony the Eighth Circuit held to be inadmissible. There, like here, "[t]he challenged testimony impugning Nichols' psychiatric credibility and suggesting that recall bias, secondary gain, and malingering had influenced her story was not a proper subject of expert testimony under FED. R. EVID. 702." *Id.* Moreover, like Dr. Souheaver, the expert in *Nichols* "did more than explain psychiatric terms and the situations in which they may arise. She provided her own opinion that Nichols' statement to Dr. Tyndall were influenced by recall bias, secondary gain and malingering." *Id.* Expert opinions like this, which weigh evidence and determine credibility, go "beyond the permissible areas of [expert] testimony." *Id.* at 883-884. Any such "inferences are for the jury to draw from the admissible evidence before it" and an expert's testimony telling the jury "how to weight that evidence" is inadmissible. *Id.* at 884. Dr. Souheaver's opinions are nothing more than judgments about Danielle and her credibility; therefore, they are not helpful.

For these reasons, Dr. Souheaver's opinion testimony about Danielle and her emotional status following Benjamin's death do not satisfy the requirements of Rule 702 and are inadmissible. The jury, not Dr. Souheaver, is tasked with determining Danielle's credibility in reporting her emotional distress after her father was killed.

C.   *Dr. Souheaver's opinions about Danielle's emotional status after her father's death are unduly prejudicial and create a serious danger of confusing or misleading the jury; therefore, Dr. Souheaver's opinions must be excluded and defense counsel should be prohibited from using such testimony or inferences in its arguments to the jury.*

A district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury." FED. R. EVID. 403. "Unfair prejudice relates to the risk that the jury will decide the case on an improper basis." *Nichols*, 154 F.3 at 885. Likewise, expert testimony which impugns a witness' psychiatric credibility, including opinions that suggest a recall bias, secondary gain, over-exaggeration, or malingering, "create a serious danger of confusing or misleading the jury" and "causing it to substitute the expert's credibility assessment for its own common sense determination." *Id.* at 883 (citations omitted). Moreover, "[b]ecause 'expert evidence can be both powerful and quite misleading,' a trial court must take special care to weigh the risk of unfair prejudice against the probative value of the evidence under FED. R. EVID. 403." *Id.* at 884 (quoting *Daubert*, 509 U.S. at 595). Due to this substantial danger inherent in such expert testimony, "[i]t is plain error to admit testimony that is a thinly veiled comment on a witness' credibility[.]" *Id.* This danger is increased when a such testimony is used in closing argument. *Id.*

Here, Dr. Souheaver's inability to diagnose Danielle with any psychological condition and his opinions about her over-exaggeration creates a serious danger of unfair prejudice, confusion of the issues, and misleading the jury. This danger of unfair prejudice is clear from the fact that Dr.

Souheaver's opinions "answer the very question at the heart of the jury's task" – can Danielle be believed? *Nichols,* 154 F.3d at 875.

Moreover, because Dr. Souheaver claims that the MMPI-2 RF supports his opinion that Danielle "was over-endorsing if not exaggerating symptoms, making her self-reporting unreliable"[21] *but* he completely disregarded any test results from scales showing that he could be wrong has a strong potential of misleading the jury into believing his medical opinion over their own inferences and assessments of Danielle's credibility. Further confusing and misleading the jury is the fact that Dr. Souheaver claims to have considered these things but absolutely ignores them because he is certain she is over-exaggerating. And while the failure to consider certain facts usually goes to the weight of an expert's testimony, there is no probative value when an expert is disingenuous about the MMPI-2 RF results and tells the jury that the cannot believe a witness. That is precisely what is occurring here – Dr. Souheaver is telling the jury that it cannot believe Danielle and her self-reporting. Such testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. It must be excluded under Rule 403.

Finally, Danielle's own testimony about her psychological and emotional mental state after her father's death is more probative that any testimony offered by Dr. Souheaver regarding his interpretation of her subjective beliefs and self-reporting. *See McQuarry*, 816 F.3d at 1058 (holding that the defendant "was the best source of [her] subjective beliefs, and [she] testified as to those beliefs" such that her "own testimony about her beliefs was "more probative" of her good-faith defense than a lengthy, confusing, and, at best, minimally relevant video").

---

[21] *Exhibit B* at 41:25-42:2

**CONCLUSION**

For the reasons set forth herein, Dr. Souheaver's testimony and opinions regarding Danielle Brantley's psychological and emotional distress resulting from her father's death is inadmissible and should be excluded.

Respectfully submitted,

McDANIEL LAW FIRM, PLC
400 S. Main Street
Jonesboro, AR 72401
Tel: (870) 336-4747
Fax: (870) 336-4747
Email: bobby@mcdaniellawyers.com

BY:      */s/ Bobby McDaniel*_____
          Bobby McDaniel, AR Bar #72083

**CERTIFICATE OF SERVICE**

In accordance with the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing instrument has been served upon all attorneys of record via:

_____CERTIFIED MAIL / RETURN RECEIPT REQUESTED
_____TELEPHONIC DOCUMENT TRANSFER (FAX)
_____FEDERAL EXPRESS / EXPRESS MAIL
_____COURIER / RECEIPTED DELIVERY
_____REGISTERED MAIL / RETURN RECEIPT REQUESTED
_____HAND DELIVER (IN PERSON)
_____REGULAR MAIL
_____EMAIL
_____ SERVED WITH COMPLAINT
__X___ CM/ECF SYSTEM

DATED: February 28, 2019

By:      */s/ Bobby McDaniel*_____
          Bobby McDaniel, AR Bar #72083
          McDANIEL LAW FIRM, PLC
          400 S. Main Street
          Jonesboro, AR 72401
          Tel: (870) 336-4747

Fax: (870) 336-4747
Email: bobby@mcdaniellawyers.com

Roman T. Galas
Christopher M. Lucca
William C. Kirby
James H. Gordon
ANSA|ASSUNCAO, LLP
Four Penn Center, Suite 900
1600 JFK Blvd.
Philadelphia, PA 19103

Robert A. Cox
Ronna Kinsella
GLASSMAN, WYATT, TUTTLE & COX, PC
26 North Second Street
Memphis, TN 38103
*Attorneys for Defendant UPS Ground Freight, Inc.*

James C. Baker, Jr.
Jamie M. Huffman Jones
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Ave., Suite 2000
Little Rock, AR 72201-3522
*Attorneys for Defendants Robert Woodall and Optimum Logistic Solutions*

Adam E. Miller
MILLER LAW GROUP
1937 E. Atlantic Blvd., Suite 204
Pompano Beach, FL 33060
*Attorney for Bridgefield Employers Insurance Company*